# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA FURRU

                Plaintiff

    v.

THE VANGUARD GROUP, INC.

                Defendant

**CIVIL ACTION**
**NO. 14-05034**

**PAPPERT, J.**                               **SEPTEMBER 4, 2015**

## MEMORANDUM

The Vanguard Group, Inc. ("Vanguard") fired Linda Furru ("Furru") in 2013.  Furru was 62 years old at the time of her termination and had worked for Vanguard for over eight years in various positions.  Believing she was terminated because of her age, Furru sued Vanguard for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 623(a)(1), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955.

Vanguard moves for summary judgment.  The Court heard oral argument on the motion on August 20, 2015 and has carefully evaluated the entire record.  The undisputed material facts show that there is sufficient evidence by which a factfinder could conclude that Furru has established a *prima facie* case of age discrimination.  There is also sufficient evidence to support Vanguard's articulated nondiscriminatory reason for firing Furru, namely composure and interpersonal issues with her coworkers and supervisors that negatively affected Furru's ability to carry out her assigned role.  Furru, however, has presented no evidence by which a factfinder could reasonably disbelieve Vanguard's articulated reason or believe that an invidious discriminatory reason was more likely than not the determinative cause of Vanguard's actions.

Vanguard is accordingly entitled to judgment as a matter of law, and the Court grants its motion.

***Facts***

The following facts are either undisputed or viewed in the light most favorable to Furru as the non-moving party.  *See El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) ("In considering the evidence [on summary judgment], the court should draw all reasonable inferences against the moving party.").

Furru started at Vanguard in 2004 as a "Level B" phone associate.  She was 53 at the time.  Over the next eight years, she filled various roles and was promoted to "Level D."  She had no disciplinary history during that time.  Nonetheless, several of Furru's performance reviews noted deficiencies in her communications style.  For example, her 2006 Mid-Year Update noted, "[a]t times Linda could be perceived as being confrontational when she is not in agreement with a policy, a business decision or workflow change."  (Pl.'s Opp'n Br., Ex. F, Doc. No. 21-5.)  Similarly, her 2007 Mid-Year Update urged Furru to "be less defensive when receiving feedback from her team leader," and her 2009 Mid-Year Update reminded Furru of "the importance of maintaining composure and thinking before reacting with an impulse e-mail or phone call.  She has made strides in this area but at times still takes actions that hinders [sic] working relationships."  (*Id.*)

In October 2011, Furru transferred to a position within Vanguard University.[1]  Her supervisor was Beverly Williams ("Williams"), who was roughly Furru's age.  For Furru's year-end 2011 performance review, Williams gave Furru an "On Track" rating, even though Furru had only been in the position for three months.  In May 2012, Furru began reporting to Christi Coreces ("Coreces").  Coreces' supervisor was Laura Lee ("Lee").  At the time, Coreces was 26 and Lee was 33.  In June 2012, Lee held a meeting with Furru to go over her 2012 mid-year

---

[1]     Vanguard University is a department within Human Resources that is responsible for employee education.

review. Coreces was at the meeting as well. During the meeting, Furru commented that working

relationships in the department had deteriorated since a group known as the Scrum Masters[2]

were brought in the previous month. On the next business day, Lee sent an email to Furru in

which she stated:

> I was disappointed in how you responded to the opportunity feedback we
> discussed. Being able to accept feedback is an important part of the Resiliency
> and Composure competency as well as the Develops Oneself competency.[3] It's
> clear you were upset and I can certainly understand that. However, I was
> particularly disappointed that you were so adamant about saying that you would
> not try to work at all on improving your relationships with the Scrum Masters. As
> we discussed, building strategic working relationships is a critical requirement for
> any role at Vanguard and both parties need to work on relationships for them to be
> effective. I hope that upon further reflection, you have decided that you will work
> on your relationship with the Scrum Masters. Second, I wanted to make sure you
> understood just know [sic] how important these competencies are to your role. As
> we discussed, at this point, you are not on track, nor will you be Fully Successful
> at year-end, if you do not close the gaps in Building Strategic Working
> Relationships and Maximizing Personal Impact. Christi and I both stand ready to
> help whenever you are ready to start working on these areas.

(Pl.'s Opp'n Br., Ex. L.) There is no evidence in the record to show that Furru responded

to this email.

Furru received a "Further Development Needed" rating at her 2012 year-end review. Her

review noted, "Your opportunity areas are around the way in which you question and execute

your projects. I appreciate the passion you bring to your work, but this can sometimes be

---

[2]     The Scrum Masters were responsible for the design and implementation of new training programs for
Vanguard University.

[3]     During the relevant time, Vanguard evaluated its employees on the following professional competencies:
Plans and Achieves Results, Understands the Organization and the Industry, Analyzes and Resolves Issues,
Demonstrates Professional Expertise, Organize and Monitor Work, Focuses on the Client, Builds Strategic Working
Relationships, Maximizes Personal Impact, Embraces Diversity, Provides Coaching and Feedback, Demonstrates
Resilience and Composure, Demonstrates Flexibility and Independent Thinking, Develops Oneself, and
Demonstrates Professionalism. (*See* Pl.'s Opp'n Br. Ex. E.) Furru's 2006 and 2007 Mid-Year Updates both listed
Demonstrates Resilience and Composure as a "Development Area." (*Id.*) Under Builds Strategic Working
Relationships, Furru's 2009 Year-End Appraisal noted, "Linda is reminded of the importance of her communication
style when conversing with crew. In some instances a more subtle approach could have been taken with the
verbiage used in e-mail exchanges . . . ." (*Id.*)

demonstrated in an argumentative manner instead of through healthy debate." (Mot. Summ. J.,

Ex. P, Doc. No. 18.)  It went on to say:

> Linda, you can struggle with effectively influencing and persuading your
> peers who can be assertive in expressing their needs and concerns.  As a
> result, you use a style that is directive and abrupt.   From direct
> observations and feedback from your peers, you can be perceived as
> inflexible and unwilling to listen and address their suggestions or
> concerns. . . .  [Y]ou do not always take ownership for situations.  You
> deflect situations on others and become defensive.

(*Id.*).  The year-end review also cited several examples of this behavior.

On March 4, 2013, Furru and Coreces attended a meeting with several Vanguard

University Deans, who were key people within the organization.  At some point, Furru felt that

one of the Deans was going off on a tangent.  She interrupted, raised her hands, and said "wait,

wait" in an attempt to get the meeting back on track.  One of the Deans, Michael Smith

("Smith"), later emailed Coreces and stated that Furru had reached out to him to discuss the

meeting.  He stated:

> [T]he perception is that [Furru] is unwilling to listen or debate and can
> become aggressive or angry. . . .  While I am happy to continue to work
> with Linda on the dashboard, her lack of ability to have open
> debate/dialogue could lead to an inability to be effective in her role.
> Personally, I would be hesitant to go to Linda with anything in the future
> other than pure requests for data.

(Mot. Summ. J., Ex. T.)[4]  Furru admits that she was "aggressive in pursuing the closure needed

by the meeting."  (Pl.'s Resp. Stmt. Undisputed Facts ¶ 39, Doc. No. 21-18.)  She also agrees

that Smith's email shows that the perception that she became angry and aggressive had seriously

---

[4]      Furru appears to contend that Smith's statements are hearsay and "not admissible for summary judgment
purposes."  (Pl.'s Resp. Stmt. Undisputed Facts ¶ 35, Doc. No. 21-18.)  However, "hearsay statements can be
considered on a motion for summary judgment if they are capable of admission at trial."  *Shelton v. Univ. of Med. &
Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000).  Because Vanguard could conceivably call Smith to testify at
trial, the Court properly considers the email in ruling on summary judgment.

degraded her ability to be effective in her role with a key stakeholder.  (Furru Dep. 304:14-18, Mot. Summ. J., Ex. A.)

Coreces issued Furru a "Written Alert"[5] in April 2013, shortly after receiving Smith's email.  (Mot. Summ. J., Ex. R.)  The Written Alert included several examples from February and March, including her behavior at the Dean's meeting, in which Furru "lost her composure" or exhibited "unprofessional and disrespectful behavior."  (*Id.*)

Around this time, Furru came to believe that Vanguard was using these subjective "composure" or "personality" issues to manage Furru out because of her age.  She raised this concern with Dena Baily ("Baily") of Vanguard Crew Relations.  (*See* Pl.'s Opp'n Br., Exs. BB-JJ.)  Baily reminded Furru that Vanguard has both standards describing the job that needs to be done and competencies describing how to get the job done.  (*Id.*, Ex. CC.)  She explained that what Furru might view as personality issues could relate to Vanguard's competencies.  (*Id.*) Baily and Furru had several conversations regarding Furru's concerns, but no formal investigation took place until after Furru' filed her charge with the EEOC after her termination.

Vanguard placed Furru on a Formal Warning on May 2, 2013.  (*See* Mot. Summ. J., Ex. X.)  The Formal Warning described an April 26, 2013 incident at which there was confusion as to what time Furru and Coreces were to meet for a one-on-one session. Furru believed Coreces was late to the meeting and approached her about it.  Coreces felt that Furru's tone was "accusatory and disrespectful."  (*Id.*)  Over the next month, Furru engaged in further behavior that Coreces perceived as disrespectful and confrontational.

---

[5]    Vanguard's progressive disciplinary procedure has three stages: oral warning, written alert, and formal warning.  There is a dispute as to whether Furru ever received an oral warning.  That dispute is not material, however, because Vanguard's Deficient Performance policy notes that the disciplinary process "may not always follow [a] specific sequence" and "termination may occur without any prior warning."  (*See* Mot. Summ. J., Ex. DD); *see also Emmett v. Kwik Lok Corp.*, 528 F. App'x. 257, 262 (3d Cir. 2013) (rejecting argument that company's failure to follow its progressive discipline policy showed pretext where policy was not mandatory or rigorously followed).

(*See, e.g.*, Meeting Notes, Mot. Summ. J., Ex. CC ("Linda again stated in a condescending tone that she was not attacking and that if Christi thought that, she was 'sorry' that Christi was 'so sensitive.'").)  Furru was fired on June 3, 2013.  She was not replaced.  Rather, her job duties were redistributed among a number of employees, at least some of whom were much younger than Furru.

### *Legal Standard*

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party.  *Id.* at 252.

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009).  The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### *Discussion*

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Similarly,

the PHRA makes it unlawful for an employer to discharge from employment any individual

because of age.  43 P.S. § 955.  "The same legal standards and analysis are applicable to claims

under both the ADEA and the PHRA . . . ."  *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 509

n.2 (3d Cir. 2004) (quotation omitted).  The Court therefore addresses the claims collectively.

*See id.*

Age discrimination claims such as this one are analyzed according to the burden shifting

framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Smith v. City of*

*Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (approving the "continued application of the

*McDonnell Douglas* paradigm in age discrimination cases.").  First, the plaintiff must establish a

*prima facie* case of age discrimination by a preponderance of the evidence.  *Smith*, 589 F.3d at

689.  The plaintiff's burden at this stage of the analysis is "not meant to be onerous . . . ."

*Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 589 (E.D. Pa. 2013).  If the plaintiff

establishes a *prima facie* case of age discrimination, the burden shifts to the defendant to

"articulate a legitimate, nondiscriminatory reason for the employer's adverse employment

decision."  *Id.* at 691.  "The employer need not prove that the tendered reason *actually* motivated

its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving

intentional discrimination always rests with the plaintiff."  *Fuentes v. Perskie*, 32 F.3d 759, 763

(3d Cir. 1994).  If the defendant meets its "relatively light burden" of articulating a legitimate,

nondiscriminatory reason, the burden shifts back to the plaintiff to "show by a preponderance of

the evidence that the employer's explanation is pretextual . . . ."  *Id.*

Turning to the facts of this case, the Court must first determine whether Furru has

presented evidence sufficient to establish a *prima facie* case of age discrimination.  To establish a

7

*prima facie* case, a plaintiff must show that (i) she is 40 or older, (ii) she is qualified for the position in question, (iii) she suffered an adverse employment decision, and (iv) there is evidence to raise an inference of age discrimination. *Smith*, 589 F.3d at 689. The parties here do not contest that Furru was over 40, qualified, and terminated. Their only dispute at this stage of the *McDonnell Douglas* framework is whether Furru has presented facts sufficient to establish an inference that age discrimination occurred.

To support an inference of age discrimination, Furru relies on the timing of the termination and the younger ages of her supervisors. She notes that she was terminated relatively quickly after being assigned to work under Coreces (age 26) and Lee (age 33). Furru points out that while her previous managers were younger than she was, Coreces and Lee were "particularly young" compared to Furru. Furru never had any disciplinary issues under prior managers, who were much closer to her own age. Furru also argues that Vanguard's failure to investigate her complaints of age discrimination support an inference that age discrimination occurred. Vanguard contends that Furru has not developed facts sufficient to raise an inference of discrimination. They primarily argue that Furru has not uncovered any evidence to show that similarly situated younger employees were treated more favorably than Furru. They also argue that Furru cannot show that she was replaced by a younger worker, the typical means of raising an inference of discrimination.

The undisputed material facts in the record are sufficient to support an inference of discrimination, so that Furru could carry her burden of establishing a *prima facie* case at trial. It is undisputed that Furru, who had no prior history of formal discipline at Vanguard, was terminated roughly a year after being assigned to managers who were nearly half her age. It is also undisputed that she was terminated for subjective composure issues rather than qualification

issues.  While the behaviors that ultimately led to her termination were noted in prior reviews under other managers, the frequency and detail of documentation increased markedly after Furru moved under Coreces and Lee.  Given those circumstances, Furru has met the relatively low bar of establishing a *prima facie* case of age discrimination.  *See Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 523 (E.D. Pa. 1992) ("Because the prima facie case is easily made out, it is rarely the focus of the ultimate disagreement.").

The Court also concludes that Vanguard has presented enough evidence to establish a legitimate, nondiscriminatory reason for terminating Furru's employment.  Vanguard states that it fired Furru "due to her continued failure to meet the established competencies for her position despite being warned several times."  (Br. Supp. Mot. Summ. J. at 18, Doc. No. 18-2.) Specifically, Vanguard contends that Furru was unreceptive to criticism and feedback, which negatively affected her ability to work in a team environment.  There is ample evidence in the record to suggest that was the case.  For example, there are several notes from Furru's managers detailing instances in which Furru was counseled on how her interactions with her teammates and key stakeholders negatively affected her ability to meet the job requirements.  (*See, e.g.*, 2012 Year-End Appraisal at 5, Pl.'s Opp'n Br., Ex. S ("Linda, you can struggle with effectively influencing and persuading peers . . . . From direct observations and feedback from your peers, you can be perceived as inflexible and unwilling to listen and address their suggestions and concerns."); 2010 Year-End Appraisal at 5, Pl.'s Opp'n Br., Ex. F ("[Furru] has made strides with her relationship building and communications skills and should continue to maintain the positive momentum she has created in these respective areas."); 2006 Mid-Year Update at 2, Pl.'s Opp'n Br., Ex. F ("Linda was not offered this opportunity [to work on a project] because the response was that she would be too argumentative and not a contributor.").  This evidence is sufficient for

Vanguard to meet its "relatively light burden" of articulating a legitimate, nondiscriminatory reason for the termination. *Fuentes*, 32 F.3d at 763.

The burden accordingly shifts back to Furru to demonstrate by a preponderance of the evidence that Vanguard's proffered reason was pretextual. To meet this burden at summary judgment, Furru "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id* at 764. Furru argues that there is evidence in the record by which a factfinder could reasonably disbelieve Vanguard's purported reason for termination.[6]

To satisfy her burden here, Furru must point to evidence to show that Vanguard's stated reason for her termination either was a post hoc fabrication or otherwise did not actually motivate the employment action. *Fuentes*, 32 F.3d at 764. She "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Vanguard's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . ." *Id.* at 765 (quotation omitted). She cannot merely assert that Vanguard's proffered reason was wrong; she must show that "it was so plainly wrong that it cannot have been [Vanguard's] real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

None of the evidence to which Furru points is sufficient to carry her burden on pretext. Furru relies most heavily on her own affidavit to show pretext. "Most often, a showing of

---

[6]     Furru does not contend that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Vanguard's actions, and upon review of the record, the Court finds no evidence by which a factfinder could reasonably come to that conclusion. Although there were a handful of discussions between Furru and her managers regarding Furru's age, they were all prompted by comments made by Furru.

pretext will require the production of documents or deposition testimony at odds with a defendant's proffered explanation." *Finizie v. Peake*, 548 F. Supp. 2d 171, 178 (E.D. Pa. 2008). "[I]t is the rare employment case in which a plaintiff can demonstrate pretext solely on the basis of her own affidavit." *Id.* This is not that rare case.

Furru's affidavit acknowledges the occurrence of many of the events for which she was purportedly terminated. She nevertheless disputes her managers' characterization of those events. For example, there is documentary and testimonial evidence that Coreces often perceived Furru's conduct as disrespectful and unprofessional. (*See, e.g.*, Coreces Dep. 28:5-13, Pl.'s Opp'n Br., Ex. PP ("She had difficulty maintaining composure and remaining professional in situations where she might disagree with other people's opinions as well as where she's receiving feedback that she disagrees with. There were several times where she wasn't able to keep her composure and, therefore, was extremely unprofessional, mean even at times, and extremely disrespectful to others.").) In response, Furru states that she is "honest and forthright," "a bit direct in nature, more analytical, and more forthcoming and less political than some others in the workplace." (Furru Aff. ¶ 11, Pl.'s Opp'n Br., Ex. SS.) Yet she attacks Coreces' *perception* of this style. (*See, e.g.*, *id.* ¶ 32 ("One noticeable habit [Coreces] had was where her subordinates had a differing viewpoint, she would say, "I am feeling disrespected." She was a good listener, but was overly sensitive to perceived slights on occasion.").)

Nevertheless, Furru's disagreement with Coreces' perceptions would not allow a factfinder to believe that Vanguard's proffered reason was untrue. Furru cannot defeat summary judgment just by denying that she had composure issues. She has to show that her managers did not honestly believe that she had composure issues. Furru points to no evidence to that effect. This alone defeats Furru's attempt to show pretext. *See Fuentes*, 32 F.3d at 766-67 ("[T]he issue

is not whether the staff members' criticisms of Fuentes were substantiated or valid,  . . . the question is whether [the decisionmaker] believed those criticisms to be accurate and actually relied upon them . . . ."); *see also Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("[The employee's] view of his performance is not at issue; what matters is the perception of the decision maker.  The fact that an employee disagrees with an employer's evaluation of him does not prove pretext.") (citation omitted) *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

Furru raises what she views as inconsistencies and contradictions between the notes of Lee and Coreces with regard to Furru's 2012 mid-year performance meeting.  Specifically, she points out that Lee's notes describe behavior that is not described in Coreces' notes.  She believes this inconsistency is evidence that upon taking over as her second-line manager, Lee began "building a file" against her in preparation for her ultimate termination.  Furru's characterization of the meeting notes, however, does not withstand scrutiny.  The notes are not inconsistent or contradictory.  While Lee's notes are certainly more detailed, it is undisputed that Lee ran the meeting, so that one would expect a more detailed rendition of the meeting from her.  Furthermore, Lee followed up with an email to Furru in which she described how she was disappointed with Furru's attitude at the mid-year review.  Furru never responded to the email to dispute Lee's characterization of the meeting.

Furru's argument that Baily's failure to investigate her age discrimination complaint is evidence of pretext is also unavailing.  Furru believes that Baily's failure to investigate shows that Vanguard was not being honest about its position.  However, the emails between Furru and Baily show that Furru did not mention age discrimination to Baily until May 2, 2013, nearly a year after the June 8, 2012 review at which Lee first raised the composure issues that ultimately

led to Furru's termination.  (*See* Pl.s' Opp'n Br., Ex. FF.)  As such, any failure to investigate, even assuming that the failure is attributable to Vanguard, does not cast doubt on Vanguard's purported nondiscriminatory reason for termination.[7]

Finally, in her effort to show pretext, Furru presents much of the same evidence on which she relies to make out her *prima facie* case (*e.g.* timing, the young age of her supervisors, her duties being redistributed to younger workers).[8]  While evidence supporting a *prima facie* case and evidence showing pretext will often overlap, the evidentiary hurdle Furru must overcome to show pretext is much higher than the one she must overcome to make a *prima facie* case.  To establish an inference of discrimination at the *prima facie* case stage, a plaintiff must point to facts by which a factfinder can reasonably *infer* that age discrimination might have been the reason for the adverse employment action.  To establish pretext, a plaintiff must point to facts by which a factfinder can reasonably *disbelieve* the employer's proffered reason for the adverse employment action.  Here, Furru's evidence is insufficient to show pretext, even though it is sufficient to raise an inference of discrimination to support her *prima facie* case.  *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998) ("Such an inference may be acceptable at the prima facie stage of the analysis, where the inquiry is based on a few generalized factors, but not necessarily at the pretext stage where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity.") (citation omitted).

---

[7]      Vanguard contends that Baily did not conduct an investigation because Furru refused to provide additional information.  (*See* Pl.s' Opp'n Br., Ex. GG.)  Furru denies that she ever refused to participate.  (*See* Furru Aff. ¶ 96.) Vanguard's failure to investigate is not sufficient evidence of pretext even viewing the facts in the light most favorable to Furru.

[8]      Furru also purports to raise a genuine issue of material fact as to "whether the timing of Vanguard's termination was meant to deprive [Furru] of the June Partnership Payment."  (Pl.'s Opp'n Br. at 24, Doc. No. 21-2.) This argument misses the point.  In an age discrimination case the question is *why* an employee was fired, not *when* an employee was fired.  Furthermore, Furru admits that the Partnership Payment is given to all employees, regardless of age.

An appropriate order follows.



                        */s/ Gerald J. Pappert*
                        GERALD J. PAPPERT, J.